UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laura DeShane,                                        Civil No. 21-1452 (DWF/HB)

                 Plaintiff,

v.

                                                       **MEMORANDUM**
City of Minneapolis; Joseph Fonseca;          **OPINION AND ORDER**
Tyler Nothnagel; County of Hennepin;
Carrie Nyblom; and Hal Haliburton;

                 Defendants.

---

Timothy M. Phillips, Esq., Law Office of Tim Phillips, counsel for Plaintiff.

Mark S. Enslin, Esq., and Sharda R. Enslin, Esq., Minneapolis City Attorney's Office; Sarah C. S. McLaren, Esq., Hennepin County Attorney's Office, counsel for Defendants City of Minneapolis, Joseph Fonseca, and Tyler Nothnagel.

Jamil Masroujeh, Esq., and Kelly K. Pierce, Esq., Hennepin County Attorney's Office, counsel for Defendants County of Hennepin, Carrie Nyblom, and Hal Haliburton.

---

**INTRODUCTION**

      This matter is before the Court on Defendant County of Hennepin, Carrie Nyblom, and Hal Haliburton's (the "Hennepin Defendants") Motion to Dismiss (Doc. No. 7 ("Motion to Dismiss")) and Plaintiff Laura DeShane's ("DeShane") Motion for Partial Summary Judgment (Doc. No. 20 ("SJ Motion").)[1]  For the reasons set forth below, the

---

[1] Defendants Carrie Nyblom ("Nyblom") and Hal Haliburton ("Haliburton") are Hennepin County sheriff's deputies.  (Doc. No. 1-5 ("First Amended Complaint" or "FAC") ¶ 6.)  DeShane sued them in both their official and individual capacities.  (*Id.*)

Court grants the Hennepin Defendants' Motion to Dismiss and denies DeShane's SJ Motion.

## BACKGROUND[2]

On November 3, 2020, DeShane followed and recorded a protest march in Minneapolis, MN.  (FAC ¶¶ 1, 8, 10.)  The march ended in Bryant Square Park.  (*Id.* ¶ 13.)  Soon after, Minneapolis Police Officers began to arrest people in and around that area.  (*Id.* ¶¶ 13, 16, 18.)  DeShane continued to record what she saw.  (*Id.* ¶ 15.)

Although DeShane was standing approximately 100 feet away from the protesters, she was arrested by Defendants Joseph Fonseca ("Fonseca") and Tyler Nothnagel ("Nothnagel").  (*Id.* ¶¶ 15, 18.)  DeShane alleges that she "was subjected to unduly tight handcuffs by Defendants Fonseca and Nothnagel that caused injury."  (*Id.* ¶ 20.)  At approximately 10:58 p.m., DeShane complained to Defendant Nyblom "that her hand was going numb due to the handcuffs placed on her by Defendants Fonseca and Nothnagel."  (*Id.* ¶ 23.)  DeShane alleges that "less than one minute later" Nyblom informed Defendant Haliburton about DeShane's complaint.  (*Id.* ¶ 24.)  DeShane further alleges that "neither Defendant Nyblom nor Defendant Haliburton assisted Plaintiff at all with her unduly tight handcuffs for at least 30 minutes or so, despite ample opportunities to do so."  (*Id.* ¶ 25.)  DeShane claims that "as a result of [her] arrest, she had to miss approximately two weeks of work."  (*Id.* ¶ 32.)

---

[2]  As discussed below, the Court denies DeShane's SJ Motion as premature and moot.  The Court therefore recites facts as detailed in the FAC and does not refer to evidence DeShane cites in support of her SJ Motion.

DeShane brings seven causes of action. (*Id.* ¶¶ 33-74.) Counts 1 and 3 are against the City of Minneapolis, Fonseca, and Nothnagel for battery ("Count 1") and false arrest/imprisonment ("Count 3"). (*Id.* ¶¶ 33-36, 41-47.) Counts 4 and 6 are against just Fonseca and Nothnagel for excessive force ("Count 4") and false arrest ("Count 6"). (*Id.* ¶¶ 48-55, 63-67.) Count 2 is against the Hennepin Defendants for negligence.[3] (*Id.* ¶¶ 37-40.) Count 5 is against Fonseca, Nothnagel, Nyblom, and Haliburton for retaliation under 42 U.S.C. § 1983.[4] (*Id.* ¶¶ 56-62.) Count 7 is against just Nyblom and Haliburton for deliberate indifference, also in violation of 42 U.S.C. § 1983.[5] (*Id.* ¶¶ 68-74.)

---

[3]   DeShane alleges that "Defendants Nyblom and Haliburton, by ignoring Plaintiff's complaint about her handcuffs being too tight for at least 30 minutes or so, breached their duty to exercise a reasonable standard of care toward Plaintiff." (FAC ¶ 39.) DeShane further alleges that Hennepin County is vicariously liable for the acts and omissions of sheriff's deputies, Nyblom and Haliburton. (*Id.*).

[4]   DeShane alleges that she "was engaged in protected activity by the First Amendment, including but not limited to recording police activity" (*id.* ¶ 57), that the "acts or omissions of Defendants Fonseca, Nothnagel, Nyblom, and Haliburton [described in her FAC], were in retaliation for Plaintiff's First Amendment activity" (*id.* ¶ 58), that the Defendants "acted under the color of law" (*id.* ¶ 60), and that "the unlawful retaliation" was "willful and recklessly indifferent to Plaintiff's constitutional rights" (*id.* ¶ 61).

[5]   DeShane alleges that "Defendants Nyblom and Haliburton were deliberately indifferent towards Plaintiff's obvious medical need caused by unduly tight handcuffs and failed to take reasonable measures to address this obvious medical need." (*Id.* ¶ 69.) She further alleges that Nyblom and Haliburton "were each aware of and deliberately disregarded Plaintiff's risk of injury due to unduly tight handcuffs, and Plaintiff communicated to Defendant Nyblom that her hand was going numb due to her handcuffs, and Defendant Nyblom promptly communicated this to Defendant Haliburton; yet neither Defendant Nyblom nor Defendant Haliburton assisted Plaintiff for at least 30 minute or so, despite ample opportunities to do so." (*Id.* ¶ 70.) DeShane further asserts that she "suffered from an objectively serious medical need at the time she communicated to Defendant Nyblom that her hand was going numb due to the handcuffs" (*id.* ¶ 71), the "lack of prompt response by Defendants Nyblom and Haliburton was obviously

DeShane seeks compensatory and punitive damages, attorney's fees and costs, prejudgment interest, and other further relief the Court deems just and proper. (*Id.* at 11.)

The Hennepin Defendants move to dismiss all of DeShane's allegations against them—Counts 2, 5, and 7. (*See generally* Motion to Dismiss.) DeShane moves for summary judgment on just her deliberate indifference claim—Count 7. (*See generally* SJ Motion.)

## DISCUSSION

### I.     Motion to Dismiss

#### A.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

---

inadequate, and violated Plaintiff's clearly established right to reasonable measures to address her obvious medical need" (*id.* ¶ 72), and that Nyblom and Haliburton "acted under color of law" (*id.* ¶ 73).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

      **1.**     **Claims Arising Under 42 U.S.C § 1983**

Claims arising under the United States Constitution and federal statutes may be asserted against government officials and municipalities pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("Section 1983…provides a means to vindicate rights conferred by the Constitution or the laws of the United States."). "Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A suit against a public employee in his or her official capacity "is merely a suit against the public employer." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).[6]

---

[6] To the extent that Hennepin County may be held liable in a section 1983 action, DeShane must plead that any alleged constitutional violation stems from a policy,

In Counts 5 and 7, DeShane sues Nyblom and Haliburton in both their individual and official capacities. To prevail on her individual capacity claims in these counts, DeShane must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated her federal constitutional rights. *Iqbal*, 556 U.S. at 676 (stating that in § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (affirming dismissal of § 1983 complaint where plaintiff "failed to allege facts supporting any individual defendant's personal involvement or responsibility for the violations"); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

### 2. Qualified Immunity

Under section 1983, government officials sued in their individual capacities may also assert an affirmative defense of qualified immunity. Where a motion to dismiss is based on such a defense, the moving party must show that it is entitled to the defense on the face of the complaint. *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016).

---

custom, or practice of the county. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). This claim requires evidence that a policy or custom "evince a deliberate indifference toward the constitutional rights of the inmate." *Nadeau v. Shipman*, 471 F. Supp. 3d 952, 977 (D.N.D. July 2, 2020) (citing *A.H. v. St. Louis Cnty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018)). The custom or policy must be the moving force behind the violation of an inmate's constitutional rights. *See Corwin v. City of Indep.*, 829 F.3d 695, 700 (8th Cir. 2016). A policy is a deliberate choice made by a policymaking official, and a custom is an unofficial practice that policymakers either tacitly authorize or to which they are deliberately indifferent. *Id.*

The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In determining whether the constitutional right was clearly established at the time of the conduct, the Court must ask whether the contours of the applicable law were "'sufficiently clear' that every 'reasonable official would have understood that what he is doing violated that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### B.     Negligence—Count 2

In Count 2, DeShane alleges that Defendants "Nyblom and Haliburton, by ignoring Plaintiff's complaint about her handcuffs being too tight for at least 30 minutes or so, breached their duty to exercise a reasonable standard of care toward Plaintiff."

7

(FAC ¶ 38.) DeShane similarly alleges that Defendant Hennepin County is vicariously liable for its employees—Nyblom and Haliburton. (*Id.* ¶ 39.)

In Minnesota, negligence has four elements: (1) a duty of care existed; (2) that duty was breached; (3) an injury was sustained by the plaintiff; and (4) the breach of the duty was the proximate cause of the injury. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001).

The Hennepin Defendants argue that DeShane's claim fails as a matter of law because her First Amended Complaint does not sufficiently allege: (1) a cognizable injury related to the Hennepin Defendants' acts or omissions; (2) a duty of care the Hennepin Defendants owed her; or (3) how the Hennepin Defendants breached any duty of care. (*See* Doc. No. 9 ("Henn. Def. Memo.") at 14; *see also* Doc. No. 14 ("Henn. Def. Reply") at 20.) The Hennepin Defendants argue further that even if the Court finds that DeShane's negligence claim is properly pled, it still fails because it is barred by official immunity.[7] (*See* Henn. Def. Reply at 20-22.)

The Court finds that DeShane fails to adequately plead her negligence claim. Specifically, the Court finds that while DeShane's First Amended Complaint generally alleges that Defendants Nyblom and Haliburton did not address her complaint about tight handcuffs for 30 minutes, she fails to sufficiently allege that she suffered an actual

---

[7] Under Minnesota law, "[t]he doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a willful or malicious wrong." *Rico v. State*, 472 N.W.2d 100, 106-07 (Minn. 1991).

8

injury.[8]  The Court similarly finds that DeShane fails to plead a duty owed to her by Defendants Nyblom and Haliburton, nor how Nyblom or Haliburton breached that duty.[9]  Thus, the Court finds that DeShane fails to state a negligence claim upon which relief can be granted and dismisses Count 2 against the Hennepin Defendants.  Because the Court dismisses Count 2 as insufficiently pled, it need not address whether it also fails as barred by official immunity.[10]

    C.    **Retaliation—Count 5**

In Count V, DeShane alleges that she was engaged in conduct protected by the First Amendment and the acts or omissions of Defendants Nyblom and Haliburton were in retaliation for her First Amendment activities.[11]  (FAC ¶¶ 57-58.)  This claim rests on DeShane's allegation that Nyblom and Haliburton allegedly failed to respond to her complaint about her hand going numb for 30 minutes.  (*Id.* ¶¶ 22-25, 31.)

---

[8]    DeShane vaguely alleges that she sustained injury and missed two weeks of work (FAC ¶¶ 33); however, she fails to plead precisely what injury she actually suffered.  Moreover, it is unclear whether DeShane missed work due to a specific injury, or because of some other reason.

[9]    DeShane alleges that "Defendants Nyblom and Haliburton, by ignoring Plaintiff's complaint about her handcuffs being too tight for at least 30 minutes or so, breached their duty to exercise a reasonable standard of care toward Plaintiff."  (FAC ¶ 38.)  The Court finds that this vague and conclusory assertion is insufficient to establish any actual duty that Nyblom and Haliburton owed DeShane or to establish any breach.

[10]    The Court notes, however, that DeShane has not pled:  (1) any facts showing that Defendants Nyblom or Haliburton acted with malice; or (2) facts or details describing the nature of the duties Nyblom and Haliburton were performing at the time of the alleged negligence, both of which are essential elements to overcome official immunity.

[11]    DeShane alleges that Nyblom and Haliburton retaliated against her because she was following and recording the protest and police activity, a right protected by the First Amendment.  (FAC, ¶¶ 10-11, 15, 57-58.)

9

The Hennepin Defendants argue that the claim against Nyblom and Haliburton fails because "the First Amended Complaint offers nothing more than conclusory allegations or a formalistic recitation of the cause of action." (Henn. Def. Memo. at 9.) The Hennepin Defendants argue further that DeShane's retaliation claim against Nyblom and Haliburton in their individual capacities also fails because Nyblom and Haliburton are entitled to qualified immunity when DeShane has failed to show that they violated a clearly established constitutional right. (*See* Henn. Def. Memo. at 11.) To the extent DeShane sues Nyblom and Haliburton in their official capacities, the Hennepin Defendants argue that the suit is really against their public employer—Hennepin County—and DeShane has failed to allege that Hennepin County had any official policy or custom that caused her harm. (*Id.* at 12-14.)

The First Amendment prohibits government officials from retaliating against individuals for their speech. *Harman v. Moore*, 547 U.S. 250, 256 (2006).

> To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) [s]he engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

*Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir. 2002)).[12] Under the third prong, a plaintiff must show

---

[12] In First Amendment retaliatory arrest cases, the Eighth Circuit also requires the plaintiff to show a fourth prong: lack of probable cause or arguable probable cause. *Galarnyk v. Fraser*, 687 F3d 1070, 1076 (8th Cir. 2010). Here, DeShane does not allege that Defendants Nyblom and Haliburton were involved in her arrest; therefore, the fourth prong does not apply.

that the retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010).

While DeShane properly alleges that she was participating in a protected activity, the Court finds that her allegations fail to satisfy the required second and third prongs set forth in *Revels*. *See Revels*, 382 F.3d at 876. Although DeShane makes the conclusory statement that Defendants Nyblom and Haliburton's failure to timely address her complaint about her hand was an adverse action against her for exercising her First Amendment right, the Court finds that she pleads insufficient facts to support her claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to support her claim. *Ashcroft*, 556 U.S. at 678. Specifically, the Court finds that DeShane fails to allege sufficient facts or circumstances to support any finding that a 30-minute time gap in addressing a complaint related to too-tight handcuffs would chill a person of ordinary firmness from engaging in a protected activity. The Court similarly finds that DeShane fails to allege sufficient facts to show that she was singled out because of her exercise of a constitutional right and that she has not shown a causal connection between Defendant Nyblom and Haliburton's alleged retaliatory animus and her subsequent injury.[13] *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010) (to show retaliatory motive, a plaintiff must show that she was "singled out because of [her] exercise of constitutional rights."); *Osborne v.*

---

[13] DeShane argues that "it is reasonable to infer that Defendants Nyblom and Haliburton purposely did not assist DeShane due to her exercise of, or Defendants Nyblom and Haliburton's belief regarding her exercise of, a right protected by the First Amendment." (Doc. No. 13 ("Pl. Opp.") at 9-10.) The Court finds that DeShane's threadbare allegations are simply insufficient to support such an inference.

*Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (a "plaintiff must show a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury.").

Because DeShane fails to plead even the barest of facts about these elements, the Court finds that Count 5 as alleged against Defendants Nyblom and Haliburton is properly dismissed. Moreover, because the Court dismisses Count 5 as insufficiently pled, it need not reach the Hennepin Defendants' other arguments.

### D.   Deliberate Indifference—Count 7

In Count 7, DeShane asserts a deliberate indifference claim under the Eighth and Fourteenth Amendments against Nyblom and Haliburton. (FAC ¶¶ 68-74.) Specifically, DeShane alleges that Nyblom and Haliburton were deliberately indifferent to her obvious medical need caused by unduly tight handcuffs and that they failed to take reasonable measures to address her serious medical need.[14] (*Id.* ¶ 69.)

The Hennepin Defendants argue that DeShane's deliberate indifference claim against Nyblom and Haliburton fails because she does not allege that: (1) that her hand going numb was an objectively serious medical need—either by medical evidence or detailing that her medical need was so obvious that a lay person would recognize her need for treatment; or (2) that Nyblom and Haliburton knew of and deliberately

---

[14]   As discussed above, DeShane further alleges that Nyblom and Haliburton "were each aware of and deliberately disregarded Plaintiff's risk of injury due to unduly tight handcuffs, and Plaintiff communicated to Defendant Nyblom that her hand was going numb due to her handcuffs, and Defendant Nyblom promptly communicated this to Defendant Haliburton; yet neither Defendant Nyblom nor Defendant Haliburton assisted Plaintiff for at least 30 minutes or so, despite ample opportunities to do so." (FAC ¶ 70.)

disregarded her serious medical condition. (*See* Henn. Def. Opp. at 5-8; *see also* Henn. Def. Reply at 3-9.) The Hennepin Defendants argue further that DeShane's deliberate indifference claim against Nyblom and Haliburton in their individual capacities also fails because Nyblom and Haliburton are entitled to qualified immunity when DeShane has failed to show that they violated a clearly established constitutional right. (*See* Henn. Def. Memo. at 11.) To the extent DeShane sues Nyblom and Haliburton in their official capacities, the Hennepin Defendants argue that the suit is really against their public employer—Hennepin County—and DeShane has failed to allege that Hennepin County had any official policy or custom that caused her harm. (*Id.* at 12-14.)

Claims based on deliberate indifference to a serious medical need raise concerns under the Eighth Amendment's prohibition against cruel and unusual punishment. Because DeShane was a pretrial detainee, her claims are properly analyzed as a Fourteenth Amendment due process claim. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Eighth Circuit has repeatedly held that pretrial detainees are entitled to "at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Tail.*, 328 F.3d 1026, 1027 (8th Cir. 2003) (internal quotation marks omitted).

Deliberate indifference—both under the Eighth and Fourteenth Amendments—requires two evidentiary showings—one objective and one subjective. *See, e.g.*, *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). Each can be demonstrated in "the usual ways, including inference from circumstantial evidence." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The objective component requires a plaintiff to demonstrate

13

that she had an objectively serious medical need. *See Grayson v. Ross*, 454 F.3d 802, 809-09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[15] *Jones v. Dept. of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (internal quotation marks omitted). The Second Circuit defines an objectively serious medical condition as "a condition of urgency, one that may produce death, degeneration, or extreme pain."[16] *See, e.g., Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component requires a plaintiff to show that the defendant actually knew of, but disregarded, the plaintiff's serious medical need. *Grayson*, 454 F.3d at 808-09. Deliberate indifference is more than negligence but does not require a plaintiff to show a jail official "purposefully cause[ed] or knowingly [brought] about a substantial risk of serious harm." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011). An obvious risk of harm "justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Schaub*, 638 F.3d at 915. To prevail on her deliberate indifference claim, DeShane "must show more than negligence, more even

---

[15] The Eighth Circuit has repeatedly found that law enforcement officers are laypeople for the purpose of a deliberate indifference claim. *See, e.g., Grayson v. Ross*, 454 F.3d 802 (8th Cir. 2006) (holding that a detainee did not have an objectively serious medical need from the perspective of the arresting officer deemed to be a layperson).

[16] Several courts in this circuit have adopted this definition when evaluating objectively serious medical needs. *See, e.g., Tripp v. Allcock*, Civ. No. 4:17-04076, 2018 WL 2338839, at *14 (D.S.D. May 1, 2018); *Semrad v. Dooley*, Civ. No. 08-4151, 2009 WL 700203, at *5 (D.S.D. March 17, 2009); *Carney v. Hess*, Civ. No. 2:04-92, 2007 WL 9752816, at *4 (E.D. Mo. Jan. 24, 2007), *aff'd*, 571 Fed. Appx. (8th Cir. 2008).

than gross negligence," *Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995), something "akin to criminal recklessness." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008).

Here, DeShane bases her objectively serious medical condition on tight handcuffs and numbness in her hand. Specifically, DeShane Alleges that she complained to Nyblom that her hand was going numb due to handcuffs placed on her by Minneapolis Police Officers. (FAC ¶ 23, 69). She further alleges that Nyblom and Haliburton deliberately disregarded her serious medical need by failing to address it for thirty minutes. (*Id.* ¶¶ 31, 69-70). Based on DeShane's allegations, the Court cannot conclude that she suffered from an objectively serious medical need.[17]

Specifically, the Court finds that a single complaint that her hand was going numb was not so compelling that Nyblom or Haliburton—two lay people for the purposes of her claim—should have easily recognized an obvious need for immediate care by a physician. *Jones*, 512 F.3d at 48. Indeed, DeShane does not allege that she complained repeatedly, that she told Nyblom or Haliburton that she was in pain, that she showed any

---

[17] DeShane relies in part on *Ellingson v. Piercy*, Civ. No. 2:14-04316-NKL, 2016 WL 2745868, at *7 n.3 (W.D. Mo. May 11, 2016) to argue that too-tight handcuffs constitutes an objectively serious medical need that requires immediate assistance. (Pl. Opp. at 4-5.) There, an officer delayed a water rescue of a handcuffed individual who was ejected from a patrol boat. *Ellingson*, 2016 WL 2745868, at *7 n.3. The Court agrees that a handcuffed individual who is drowning clearly demonstrates an objectively serious medical need that requires immediate assistance; here though, DeShane was handcuffed on solid ground with no obvious indication—either visibly or through her own verbal expressions—that she was suffering from an objectively serious medical need that required immediate assistance. The Court similarly finds that the other cases DeShane relies on are inapposite to the facts and circumstances of this case and fail to alter the Court's analysis and conclusion.

visible sign of injury the night of her arrest, or that she suffered serious injury or bodily harm.  DeShane similarly fails to allege that she continues to suffer any ongoing effects from the allegedly too-tight handcuffs, or that she sought medical treatment or diagnosis after her arrest.[18]  Even construing all reasonable inferences in her favor, the Court simply cannot conclude that DeShane has sufficiently alleged that she suffered from an objectively serious medical need.

The Court similarly finds that DeShane's single complaint that her hand was going numb is insufficient to allege that Nyblom and Haliburton actually knew of but deliberately disregarded an objectively serious medical need.  Again, even accepting all of DeShane's factual allegations as true and construing all reasonable inferences in her favor, the Court finds that DeShane's allegations fail to properly state a section 1983 deliberate indifference claim against Nyblom and Haliburton.  The Court therefore dismisses Count 7 as insufficiently pled.[19]  Because the Court dismisses Count 7 as insufficiently pled, it need not reach the Hennepin Defendants' other arguments as to why the claim fails.

### E.     Dismissal without Prejudice

---

[18]     While DeShane does allege that "as a result of [her] arrest, she had to miss approximately two weeks of work" (FAC ¶ 32), DeShane does not allege that the time she missed resulted from the too tight handcuffs, or that she sought medical treatment upon release and diagnosed with a serious medical condition.

[19]     To the extent DeShane sues Nyblom and Haliburton in their official capacities, the Court agrees with the Hennepin Defendants that her claim fails because she has failed to allege that Hennepin County had any official policy or custom that caused her harm.

As discussed above, the Court finds that each of DeShane's claims against the Hennepin Defendants fails as insufficiently pled. Anticipating that the Court may dismiss her claims, DeShane concluded her briefing with an informal request that she be allowed to replead any claims that Court finds insufficient. (Pl. Opp. at 13.) While the Court grants DeShane's informal request for amendment and dismisses her claims without prejudice, over the Hennepin Defendants' objection, the Court notes that it is a close call whether amendment may be futile and cautions DeShane accordingly.

## II. Motion for Summary Judgment

Because the Court grants the Hennepin Defendants' Motion to Dismiss, the Court respectfully denies DeShane's SJ Motion as premature and moot.

## CONCLUSION

For the reasons set forth above, the Court concludes that DeShane's claims against the Hennepin Defendants fail as insufficiently pled. The Court therefore grants the Hennepin Defendant's Motion to dismiss. While the Court will permit DeShane an opportunity to amend her claims against the Hennepin Defendants, the Court urges DeShane to critically assess whether she can in good faith add any other facts that will revive her dismissed claims. Finally, because the Court grants the Hennepin Defendants' Motion to Dismiss, DeShane's SJ Motion is respectfully denied as premature and moot.[20]

---

[20] DeShane filed her SJ Motion prior to engaging in any form of discovery. Even if the Court had declined to grant the Hennepin Defendants' Motion to Dismiss, the Court would be inclined to find that DeShane's SJ Motion is premature because it cannot determine whether there are genuine issues of material fact at this early stage of the proceedings.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants County of Hennepin, Carrie Nyblom, and Hal Haliburton's Motion to Dismiss (Doc. No.[9]) is granted insofar as Plaintiff Laura DeShane's claims against them are **DISMISSED WITHOUT PREJUDICE**; and

2. Defendant Laura DeShane's Motion for Partial Summary Judgment (Doc. No. [20]) is respectfully **DENIED** as premature and moot.

Dated: March 3, 2022                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge