UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laura DeShane,　　　　　　　　　　　　　　　Civil No. 21-1452 (DWF/HB)

　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM
　　　　　　　　　　　　　　　　　　　　　　　OPINION AND ORDER
City of Minneapolis; Joseph Fonseca;
Tyler Nothnagel; County of Hennepin;
Carrie Nyblom; and Hal Haliburton;

　　　　　　Defendants.

_____

Timothy M. Phillips, Esq., Law Office of Tim Phillips, counsel for Plaintiff.

Mark S. Enslin, Esq., and Sharda R. Enslin, Esq., Minneapolis City Attorney's Office; counsel for Defendants City of Minneapolis, Joseph Fonseca, and Tyler Nothnagel.

Jamil M. F. Masroujeh, Esq., and Kelly K. Pierce, Esq., Hennepin County Attorney's Office, counsel for Defendants County of Hennepin, Carrie Nyblom, and Hal Haliburton.

_____

INTRODUCTION

　　　　This matter is before the Court on Defendant County of Hennepin, Carrie Nyblom, and Hal Haliburton's (collectively, the "Hennepin Defendants") second Motion to Dismiss (Doc. No. 42 ("Motion")) Plaintiff Laura DeShane's ("DeShane") Second Amended Complaint (Doc. No. 40 ("Second Amended Complaint" or "SAC")).[1]  For the reasons set forth below, the Court grants the Hennepin Defendants' Motion.

---

[1] 　　In September 2021, the Hennepin Defendants moved to dismiss the claims DeShane asserted against them in her First Amended Complaint. (Doc. No. 7.) In December 2021, DeShane filed a motion for partial summary judgment prior to any

## BACKGROUND

On November 3, 2020, DeShane "became aware of a protest march passing through Uptown in Minneapolis" and "went outside to see what was happening." (SAC ¶¶ 8-9.) She "began recording the demonstration on Facebook Live" and "walked alongside the march in attempt to figure out who organized it and what was going on." (*Id.* ¶¶ 10-11.) The march ended in Bryant Square Park. (*Id.* ¶ 13.) Soon after, "[a] Minneapolis Police Department strike team attempted to arrest everyone in Bryant Square Park." (*Id.* ¶ 16.) DeShane continued to record from approximately 100 feet away as protesters dispersed. (*Id.* ¶ 15.)

DeShane alleges that based on her proximity, demeanor, and that she was not trying to flee, it was clear that she was not one of the protesters. (SAC ¶ 17.) Nonetheless, DeShane was arrested by Defendants Joseph Fonseca ("Fonseca") and Tyler Nothnagel ("Nothnagel"). (*Id.* ¶ 18.) DeShane alleges that she "was subjected to unduly tight handcuffs by Defendants Fonseca and Nothnagel that caused injury." (*Id.* ¶ 20).[2]

---

discovery. (Doc. No. 20.) On March 3, 2022, the Court granted the Hennepin Defendants' motion, dismissing each of DeShane's three claims against them without prejudice, and denied DeShane's motion as premature and moot. (Doc. No. 39.) On March 7, 2022, Plaintiff filed a Second Amended Complaint alleging a single count of negligence against the Hennepin Defendants. (SAC ¶¶ 54-63.)

[2]   DeShane alleges that through her work as a "certified wilderness first responder," she had a "basic medical understanding of what kind of damage could be done to a limb with severely restricted blood flow." (SAC ¶ 21.)

2

DeShane was subsequently transferred to the custody of Defendants Carrie Nyblom ("Nyblom") and Hal Haliburton ("Haliburton")[3] who assisted the Minneapolis police by transporting her and seven other female arrestees to the Hennepin County Jail.[4] (*Id.* ¶ 22; *see also* Phillips Decl. ¶¶ 6-7, Ex. 6 ("Nyblom Camera") at 0:02:50-0:05:23, Ex. 7 ("Haliburton Camera") at 0:00:42-0:03:15.)[5] At approximately 10:58 p.m., DeShane reported to Nyblom that her hand was going numb.[6] (*Id.* ¶ 25; Nyblom Camera at 0:24:23-0:24:33.) DeShane alleges that "less than one minute later" Nyblom informed Haliburton about DeShane's complaint. (*Id.* ¶ 26; Nyblom Camera at 0:25:13-0:25:20; Haliburton Camera at 0:23:04-0:23:11.) DeShane further alleges that "neither Nyblom nor Haliburton assisted [her] until [she] arrived at the Hennepin County Jail 30 minutes or so later, despite ample opportunities to assist her earlier." (*Id.* ¶ 27.) After her arrival at the Hennepin County Jail, DeShane "begged officers to look at her hands, and an

---

[3]     Defendants Nyblom and Haliburton are Hennepin County sheriff's deputies. (SAC ¶ 6.) DeShane sued them in both their official and individual capacities. (*Id.*)

[4]     The parties agree that the Court may consider the exhibits attached to the Declaration of Tim Phillips (Doc. No. 23 ("Phillips Decl.")) which are referenced in and embraced by DeShane's SAC. (*See* Def. Memo. at 5; Pl. Opp. at 2 n.1.)

[5]     The Court's camera footage time citations refer to the "time elapsed," which appears in the bottom left corner of the footage.

[6]     The Nyblom Camera shows that DeShane made a single comment to Nyblom that her hand was going numb. (Nyblom Camera at 0:24:23-0:24:33.) DeShane alleges that she "reported this to Nyblom because her hand was going numb due to the handcuffs placed on her by Defendants Fonseca and Nothnagel." (SAC ¶ 25.) The Nyblom Camera does not show that DeShane actually told Nyblom that her hand was going numb due to the handcuffs. (Nyblom Camera at 0:24:23-0:24:33.)

3

officer who looked at her hands said that one or both of them looked 'pretty purple.'" (*Id.* ¶ 29.)

DeShane alleges that "[a]s a result of this conduct by Defendants Fonseca, Nothnagel, Nyblom, and Haliburton, [she] was diagnosed with 'strain of extensor pollicis longus tendon—i.e., a strained tendon—and 'radiculopathy of cervical region'—i.e., irritation of the nerves coming from [her] neck."[7] (*Id.* ¶ 30.) DeShane states that her injuries, which involved "right hand, wrist, and arm pain, and pain from [her] neck down the back right of her arm," lasted for approximately three weeks."[8] (*Id.* ¶ 33.)

DeShane brings six causes of action. (*Id.* ¶¶ 50-90.) Counts 1 and 3 are against the City of Minneapolis, Fonseca, and Nothnagel for battery ("Count 1") and false arrest/imprisonment ("Count 3"). (*Id.* ¶¶ 50-53, 64-70.) Counts 4-6 are against just Fonseca and Nothnagel for excessive force ("Count 4"), retaliation ("Count 5") and false arrest ("Count 6"). (*Id.* ¶¶ 71-78, 79-85, 86-90.) Count 2 is against the Hennepin Defendants for negligence. (*Id.* ¶¶ 54-63.) DeShane seeks declaratory relief, compensatory and punitive damages, attorneys' fees and costs, prejudgment interest, and other further relief the Court deems just and proper. (*Id.* at 11.)

---

[7] DeShane states that she called a medical facility three days after her arrest and sought medical attention three days after that because the pain allegedly caused by the unduly tight handcuffs did not improve and she was having a hard time holding things. (SAC ¶¶ 40-42.)

[8] DeShane further alleges that "as a result of [her] arrest, she had to miss approximately two weeks of work due to her possible exposure to COVID-19 during her arrest and incarceration." (*Id.* ¶ 49.)

The Hennepin Defendants move do dismiss Count 2—the only count asserted against them—on the grounds that she fails to allege sufficient facts to sustain her negligence claim or to overcome official immunity. (*See generally* Doc. Nos. 43 ("Def. Memo."); 53 ("Reply").)

## DISCUSSION

### I.   Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Here, the parties agree that the Court may consider the exhibits attached to the Declaration of Tim Phillips ("Phillips Declaration"), which are referenced in and embraced by DeShane's SAC. (*See* Def. Memo. at 5; Pl. Opp. at 2 n.1.)

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must

5

contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### A. Negligence

DeShane alleges a single Count of negligence against the Hennepin Defendants.[9] (SAC ¶¶ 54-63.) To prevail on her claim under Minnesota law, DeShane must establish that: (1) the Hennepin Defendants owed her a duty of care; (2) the Hennepin Defendants breached that duty; (3) DeShane sustained an injury; and (4) the breach of the duty was the proximate cause of the injury. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001). The existence of a duty is a question of law. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 307 (Minn. 1996).

In Minnesota, "[g]eneral negligence law imposes a general duty of reasonable care when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn.2011). To determine whether an injury was foreseeable, the Court looks to the defendant's conduct and

---

[9] DeShane brings her claim against Nyblom and Haliburton in their individual and official capacities, and against Hennepin County as vicariously liable for its employees. (SAC ¶¶ 6, 62.)

6

determines whether it was objectively reasonable to expect the specific danger causing plaintiff's injury. *Id*. at 27. "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of an [injury] was clear to the person of ordinary prudence.'" *Id*. (citation omitted). Importantly, "the care exercised must adequately remedy the harm foreseeable from the defendant's conduct." *Id.* at 28; *see also Mack v. Stryker Corp*., 748 F.3d 845, 849-50 (8th Cir. 2014) (citing and applying *Domagala*'s articulation of duty and foreseeability). Thus, while "the reasonable care standard itself does not vary based on defendant's conduct . . . the degree of care required to satisfy that standard does change based on the circumstances." *Domagala*, 805 N.W.2d at 28. Determining an appropriate degree of reasonable care requires balancing the likelihood of harm and the gravity of the harm if it happens, against the burden of the precaution that would effectively prevent the harm in a given situation. *Gaudreault v. Elite Line Servs., LLC,* 22 F. Supp. 3d 966, 975 (D. Minn. 2014) (citing *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 621 (Minn. 1984)).

With respect to causation, "[t]he negligent act is a direct, or proximate, cause of harm if the act was a substantial factor in the harm's occurrence . . . [f]actual, or but-for, causation is insufficient to establish liability." *George v. Estate of Baker*, 724 N.W.2d 1, 10 (Minn. 2006). Notwithstanding, but-for causation "is still necessary for substantial factor causation because if the harm would have occurred even without the negligent act, the act could not have been a substantial factor in bringing about the harm." *Id.* at 11. Factual cause may be determined by "compar[ing] what actually happened with a hypothetical situation identical to what actually happened but without the negligent

7

act." *Id.* The existence of proximate cause is usually a question of fact for the jury; however, it is a question of law when reasonable minds can only reach one conclusion. *Lietz v. N. States Power Co.*, 718 N.W.2d 865, 872 (Minn. 2006).

DeShane alleges that "[a]t the time [she] was in the custody of Defendants Nyblom and Haliburton . . . [they] had a duty to exercise a reasonable standard of care toward [her]. (SAC ¶ 55.) She states that:

> [As] a result of [her] complaint to Defendant Nyblom, and Defendant Nyblom's communication of that complaint to Defendant Haliburton, Defendants Nyblom and Haliburton had one or more ministerial duties–that is, the duty to perform one or more ministerial tasks, including but not limited to: checking, as soon as possible, whether [DeShane] needed medical attention; offering a response by Emergency Medical Services; checking [DeShane's] handcuffs to determine whether they were unduly tight; and/or loosening or replacing [DeShane's] handcuffs if they were unduly tight.

(*Id.* ¶ 56.) DeShane further alleges that "Defendants Nyblom and Haliburton breached their duty or duties . . . by ignoring [her] complaint for at least 30 minutes or so, despite ample opportunities to assist [her]" (*id.* ¶ 59), and that as a result, she was diagnosed with "strain of extensor pollicis longus tendon—i.e., a strained tendon—and "radiculopathy of cervical region"—i.e., irritation of the nerves coming from [her] neck" (*id.* ¶ 60). She further claims that "[t]hese injuries would not have occurred had Defendants Nyblom and Haliburton promptly assisted [her] following [her] complaint to Defendant Nyblom," and that "[a]s a direct and proximate result of these actions, [she] suffered harm." (*Id.* ¶¶ 61-63.)

The Hennepin Defendants argue that DeShane's negligence claim is insufficient because she fails to allege that Nyblom and Haliburton breached a duty owed to her or

8

that their conduct was the direct or proximate cause of her injuries.  (Def. Memo. at 8-14; Reply at 9-11.)

The Hennepin Defendants first contend that DeShane fails to allege that Nyblom or Haliburton breached their duty of care when both her SAC and the Nyblom Camera reflect that DeShane made a single comment that her hand was going numb without further elaboration or reference to any particularized issue or condition.[10]  (Def. Memo. at 10-12; Reply at 9-10.)  The Hennepin Defendants assert that DeShane's isolated comment to Nyblom that her hand was going numb "is simply insufficient to apprise a person of ordinary prudence of any an ongoing medical emergency, pain or discomfort related to handcuffs, or that an injury was imminent."  (Def. Memo. at 10-11.)  The Hennepin Defendants therefore argue that Nyblom and Haliburton cannot have breached a duty to exercise reasonable care toward DeShane when the possibility of injury was not foreseeable to them.  (*Id.* at 11.)

The Hennepin Defendants similarly argue that DeShane's claim is insufficient because she fails to allege that Nyblom or Haliburton's conduct was the direct or proximate cause of her injuries.  (*Id.* at 12-14; Reply at 10.)  They argue that DeShane's allegations are "nothing more than but-for causation" and that she fails to allege sufficient facts to establish that Nyblom and Haliburton were a substantial factor in

---

[10]  The Hennepin Defendants assert that DeShane "does not allege, nor [does the Nyblom or Haliburton Camera footage] show, that she told [Nyblom or Haliburton] or any other individual that she was experiencing discomfort or numbness *because of the handcuffs* from the moment she was transferred to the Deputies' custody until she arrived at the jail."  (Def. Memo. at 10 (emphasis in original).)

bringing about her alleged harm.  (Def. Memo. at 13; Reply at 10.)  The Hennepin Defendants assert that:

> [E]ven when comparing what actually happened with a hypothetical situation identical to what actually happened but without the alleged negligent act ([Nyblom and Haliburton] not assisting immediately), [DeShane] doesn't set forth facts or allegations to support that her injury would not have occurred had the [Nyblom and Haliburton] assisted immediately.

(Def. Memo. at 13.)

DeShane contends that her negligence claim contains sufficient factual allegations "to put [the Hennepin Defendants] on fair notice of [her] legal theory."  (Pl. Opp. at 6.)  To this end, she asserts that her complaint clearly alleges that "Nyblom and Haliburton had a duty to exercise a reasonable standard of care toward [her], to check whether [she] needed medical attention, to offer a response by Emergency Medical Services, and to loosen [her] handcuffs."  (*Id.*)  DeShane similarly contends that her SAC properly asserts that Nyblom and Haliburton breached their duties by failing to assist her for at least 30 minutes.  (*Id.*)

DeShane further argues that whether Nyblom and Haliburton's failure to address her concern was a substantial factor in causing her injuries is not an issue to be decided by the Court on a motion to dismiss.  (*Id.* at 8 (citing *Vanderweyst v. Langford*, 303 Minn. 575, 576 (Minn. 1975).)  She also contends that because her SAC alleges that as a result of the conduct by Nyblom and Haluburton, she was diagnosed with a strained tendon and irritation of the nerves coming from her neck (*id.* (citing SAC ¶ 60)), and that these injuries would not have occurred had Nyblom and Haliburton promptly assisted her

10

after complaining about her hand (*id.* (citing SAC ¶ 61)), her negligence cause of action "contains sufficient factual allegations to support a plausible claim for which relief can be granted, and to put the [Hennepin Defendants] on fair notice of [her] legal theory" (*id.*).

Over DeShane's strong objection, the Court once again finds that her allegations are simply insufficient to support a cause of negligence. "[T]he duty to exercise reasonable care arises from the probability or foreseeability of injury to the Plaintiff." *Domagala*, 805 N.W.2d at 26. DeShane's SAC contains a single allegation that she informed Nyblom that her hand was going numb. (SAC ¶ 25.) Nyblom's Camera also clearly depicts that DeShane remarked just once that her hand felt numb—with no reference to her handcuffs. (Nyblom Camera at 0:24:23-0:24:33.) Moreover, upon careful review of the footage from both Nyblom and Haliburton's Cameras, the Court cannot conclude from DeShane's body language or verbal expressions that an injury was obvious or imminent. (Nyblom Camera at 0:24:23-0:24:33.) The Court finds that a single statement that her hand was going numb is simply insufficient to apprise a person of ordinary prudence of any ongoing medical emergency, pain, or discomfort related to handcuffs, or that any injury was imminent. *Domagala*, 805 N.W.2d at 26. The Court therefore dismisses DeShane's negligence claim for failure to establish that Nyblom or Haliburton breached any duty of care owed to her while in custody.[11] *Id.* at 28 ("[T]he

---

[11] Even if DeShane had successfully pleaded that Nyblom and Haliburton breached a duty of care owed to her, the Court finds that her negligence claim also fails because she fails to allege sufficient facts to establish that Nyblom or Haliburton's actions were a substantial factor in the occurrence of the alleged harm she suffered. *George*, 724 N.W.2d. at 10. The but-for causation DeShane relies on is insufficient to establish liability under Minnesota law. *Id.* The Court therefore finds that her negligence cause of

care exercised must adequately remedy the harm foreseeable from the defendant's conduct."); *see also Cooney v. Hooks*, 535 N.W.2d 609, 612 (Minn. 1995) (dismissing negligence claim because there was no evidence that harm was foreseeable); *Connolly v. Nicollet Hotel*, 95 N.W.2d 657, 664 (Minn. 1959) (asserting that the possibility of an injury must be clear to a person of ordinary prudence).

### B. Official Immunity

Even if DeShane's SAC contained sufficient factual allegations to plausibly allege negligence, the Court further finds that her claim would still fail as barred by official immunity.

Under Minnesota law, "official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a willful or malicious wrong." *Rico v. State*, 472 N.W.2d 100, 106-07 (Minn. 1991). Police officers are generally considered discretionary officials entitled to that immunity. *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990). "Official immunity is intended 'to protect public officials from the fear of personal liability that might deter independent action.'" *Dokman v. Cnty. of Hennepin*, 637 N.W.2d 286, 296 (Minn. Ct. App. 2001) (quoting *Janklow. Minn. Bd. of Exam'rs for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn. 1996)). "Police are 'afforded a wide degree of discretion precisely because a more stringent standard could inhibit action.'" *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992) (quoting *Elwood v. Rice*

---

action contains insufficient factual allegations to support a plausible claim upon which relief can be granted.

12

*Cnty.*, 423 N.W.2d 671, 678 (Minn. 1978)). Official immunity is particularly broad in emergency situations which require significant independent judgment and discretion. *Id.*

"Whether official immunity applies requires the court to focus on the nature of the particular act in question." *Johnson*, 453 N.W.2d at 42. While discretionary duties are immunized from personal liability, ministerial duties are not. *Rico*, 472 N.W.2d at 107. Ministerial duties are "absolute, certain[,] and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.* (citation omitted). Official immunity similarly does not protect an official who commits a willful or malicious wrong.[12] *Id.* at 106-07.

It is a question of law whether an officials' duty is discretionary or ministerial. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999.) "The arrest and handcuffing of an individual is typically considered a discretionary act that is protected by the doctrine of official immunity." *Ivey v. Williams*, Civ. No. 12-30 (DWF/TNL), 2019 WL 669805, at *3 (D. Minn. Feb. 19, 2019) (citing *Johnson*, 453 N.W.2d at 41-42); *see also Oliver v. City of Minneapolis*, Civ. No. 04-3022 (PAM/RLE), 2005 WL 2406035, at *8 (D. Minn. Sept. 27, 2005) (explaining why handcuffing and transport are properly categorized as discretionary duties).

The Hennepin Defendants argue that because handcuffing and transport are discretionary duties, DeShane's official capacity claims against Nyblom and Haliburton

---

[12] Malice, which in the context of immunity is synonymous with willful, "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico*, 472 N.W.2d at 107 (internal quotation marks and citation omitted).

are barred by official immunity when DeShane does not plead that they acted maliciously. (Def. Memo. at 7.) The Hennepin Defendants further argue that because Nyblom and Haliburton are protected by official immunity, DeShane's negligence claim against Hennepin County—their employer—is similarly barred by vicarious immunity. (*Id.* at 7-8.)

DeShane argues that her SAC properly alleges that Nyblom and Haliburton had a duty or duties to: "(1) check whether [she] needed medical attention; (2) offer a response by Emergency Medical Services; and/or (3) loosen or replace [her] handcuffs," and that it is too early to determine whether the duties were discretionary or ministerial. (Pl. Opp. at 7 (citing SAC ¶¶ 55-56).) DeShane further argues that her negligence claim is not related to how she was handcuffed or transported, but how Nyblom and Haliburton responded to her report that her hand was going numb. (*Id.* at 9.) She contends that absent discovery on Hennepin County's policies and procedures with respect to the aforementioned duties, this Court cannot properly determine whether official immunity bars her claim. (*Id.* at 9-10.) DeShane also contends that even if Nyblom and Haliburton are entitled to official immunity, "policy considerations support the conclusion that Hennepin County is not necessarily entitled to official immunity," because it would reward failing to protect people in its custody from harm. (*Id.* at 10.)

The Court first observes that official and vicarious official immunity can provide a basis for dismissal under Rule 12(b)(6) if, as here, the "affirmative defense is apparent on the face of the complaint." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (internal quotations and citations omitted). Next, the Court respectfully disagrees

14

with DeShane that her negligence claim is somehow based on anything other than handcuffing and transport. The alleged duties she cites are directly linked to her handcuffing and transport, which naturally involve a variety of nuanced decisions including—if properly alerted to foreseeable harm—whether, when, and what type of medical attention may be necessary, and balancing safety concerns as to whether loosening of handcuffs may be appropriate. The Court also observes that the Nyblom and Haliburton Cameras clearly reflect a chaotic scene involving multiple transportees surrounded by dozens of other arrestees, onlookers, and law enforcement. (*See generally* Nyblom and Haliburton Cameras.) Under these conditions, which afford limited time for reflection or analysis and requires the exercise of significant independent judgment, the Court finds that Nyblom and Haliburton are appropriately afforded official immunity for the alleged duties DeShane cites in her SAC.[13]  *Pletan*, 494 N.W.2d at 40.

The Court similarly finds that Hennepin County is vicariously immune from suit. "Generally, if a public official is found to be immune from suit on a particular issue, his or her government employer will be vicariously immune from a suit arising from the employee's conduct and claims against the employer are dismissed." *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 663-64 (Minn. 2004). While vicarious liability is not automatically extended, it applies "when failure to grant it would focus 'stifling attention' on an official's performance 'to the serious detriment of that

---

[13]  The Court also notes that because DeShane's SAC does not include allegations that Nyblom or Haliburton acted maliciously, that exception to official immunity does not apply.

performance.'" *Id.* at 664 (quoting *Olson v. Ramsey Cnty.*, 509 N.W.2d. 368, 372 (Minn. 1993)). Here, the Court finds that policy considerations support the conclusion that Hennepin County is entitled to vicarious immunity.[14]

### C. Dismissal with Prejudice

Finally, the Court finds that because DeShane once again fails to allege facts sufficient to sustain her claim against the Hennepin Defendants—and that even if her claim were sufficient, it would still be barred by official immunity—her allegations against the Hennepin Defendants are properly dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, the Court concludes that DeShane's remaining claim against the Hennepin Defendants fails as insufficiently pled and barred by official immunity. Because this is DeShane's second attempt to fix her deficient complaint against the Hennepin Defendants without success, the Court dismisses her claim against them with prejudice.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant County of Hennepin, Carrie Nyblom, and Hal Haliburton's second Motion to Dismiss (Doc. No.[42]) is **GRANTED**,

---

[14] The Court believes that failure to grant vicarious immunity under the circumstances presented in this case could focus undue attention on each decision a deputy sheriff makes during chaotic mass arrests, which—as discussed above—requires the exercise of significant independent judgment.

2. Plaintiff Laura DeShane's claim against Defendants County of Hennepin, Carrie Nyblom, and Hal Haliburton is **DISMISSED WITH PREJUDICE**.

Dated:  June 30, 2022                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge